**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                       :
ALEXIS DEJESUS,                        :
                                       :  Civil Action No. 10-2114 (FSH)
            Petitioner,                :
                                       :
      v.                               :      **O P I N I O N**
                                       :
MICHELLE RICCI, et al.,                :
                                       :
            Respondents.               :
_____:

**APPEARANCES:**

Alexis DeJesus, Pro Se
#409829/204254
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625-0861

Sara A. Friedman, Esq.
Office of the Essex County Prosecutor
Essex County Courts Building
Newark, NJ 07102
Attorney for Respondents

**HOCHBERG, District Judge**

    Petitioner, Alexis DeJesus, submitted this petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, and

Respondents, Michelle Ricci and the Attorney General of New

Jersey, have submitted an answer to the petition (docket entry

11), with the available state court record.  For the following

reasons, the petition will be denied.

## BACKGROUND

### A.   Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division ("Appellate Division"), in Petitioner's appeal of the denial of his post-conviction relief motion ("PCR").[1]  See Respondents' Exhibit ("RE") EE.

> The charges arose from brutal stabbings involving several victims, which occurred on July 25, 1998. The incident left one man dead and three others seriously injured from multiple stab wounds. Acquaintances of defendant and his co-defendants testified at trial as to admissions made by defendant. The jury also heard prior inconsistent statements from some recanting witnesses. Although defendant admitted being present during the initial confrontation, he claimed that he did not go inside the building where the actual injuries were inflicted, that he did not fight with anyone, and that he saw no knives. The incident resulted from angry words casually exchanged between defendant and his companions and one of the victims and the victim's cousin.

See RE EE, State v. DeJesus, 2009 WL 578803 (N.J. App. Div. Mar. 9, 2009).

### B.   Procedural Background

On May 18, 2000, Petitioner was convicted of nine counts of an eleven-count indictment, including burglary, aggravated

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

assault, conspiracy to commit murder, aggravated manslaughter, felony murder, and weapons charges, in violation of New Jersey state law.  On July 14, 2000, Petitioner was sentenced to an aggregate term of sixty-four years imprisonment.

Petitioner appealed.  On February 17, 2004, the Appellate Division affirmed the conviction and remanded for resentencing. On June 4, 2004, the New Jersey Supreme Court denied Petitioner's petition for certification.

On or around September 17, 2004, Petitioner filed a motion for post-conviction relief ("PCR") in the trial court.  On February 9, 2007, the trial court denied the PCR motion.  On appeal, the denial of PCR was affirmed on March 9, 2009. Petitioner filed a petition for certification with the New Jersey Supreme Court, which was denied on May 8, 2009.

Petitioner filed this habeas petition on April 26, 2010.  On May 25, 2010, he filed a motion to amend his petition, which was granted.  Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and Respondents were ordered to answer.  Respondents filed an answer to the petition and the available state court record on or about December 22, 2010.

C.   **Petitioner's Claims**

Petitioner cites nine grounds for relief (Amended Petition, ¶ 12):

> (1)   The trial court erred in not granting Petitioner's request for a mistrial after the state's witness clearly and audibly made reference to the defendants as members of the Latin Kings.
> (2)   The trial court erred in not granting a mistrial as future witnesses were present during other witness testimony thus rendering any in-court identification and testimony unreliable.
> (3)   The trial court erred in not dismissing the burglary and felony murder charge at the motion for judgment of acquittal as the burglary count should have been dismissed.
> (4)   The trial court erred in charging conspiracy to commit murder as there was no substantive proof of such an agreement.
> (5)   The prosecutor's closing argument exceeded the bounds of propriety.
> (6)   Defense counsel was ineffective for not informing Petitioner that he could propose a plea offer to the State.
> (7)   Lack of sufficient evidence to indict defendant and improper comments of the prosecutor violated Petitioner's rights.
> (8)   The cumulative effect of the errors described herein deprived Petitioner fundamental fairness in violation of his rights.
> (9)   The petition for a writ of habeas corpus should be granted.

(Am. Pet., ¶ 12).

## 28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an

4

application for a writ of habeas corpus in behalf of a
person in custody pursuant to the judgment of a State
court only on the ground that he is in custody in
violation of the Constitution or laws or treaties of
the United States.

With respect to any claim adjudicated on the
merits in state court proceedings, the writ shall not
issue unless the adjudication of the claim

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of,
clearly established Federal law, as determined
by the Supreme Court of the United States; or

(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court

precedent "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially

indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,

for the Court, Part II).  A state court decision "involve[s] an

unreasonable application" of federal law "if the state court

identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the

particular state prisoner's case," and may involve an

"unreasonable application" of federal law "if the state court

either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d

Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d
Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir.
1969), <u>cert.</u> <u>denied</u>, 399 U.S. 912 (1970).

<u>**DISCUSSION**</u>

**A.**   <u>**Trial Court Error Claims (Grounds 1, 2, and 3).**</u>

In Ground 1, Petitioner argues that the trial court erred in
not granting the request for mistrial after a State witness made
reference to defendants as members of the "Latin Kings."  In
Ground 2, Petitioner argues that the trial court erred in not
granting the request for mistrial due to witnesses being present
during other witness testimony.  Finally, in Ground 3, Petitioner
argues that the trial court should have dismissed the burglary
and felony murder charges at the motion for judgment of
acquittal, "as the burglary count should have been dismissed as
defendants only entry was into the common hallway of a multi-
dwelling unit and thereby the felony murder charge would fail."
(Pet., ¶ 12).

As to the motion for mistrial, the Appellate Division found
on direct appeal:

> [Co-defendant] and Alexis [DeJesus] claim that the
> judge erred by not granting their motions for mistrial.
> Before trial began, [co-defendant's] counsel informed
> the judge that all counsel had agreed that there would
> be no mention of a gang called the Latin Kings, due to
> the potential prejudice it could generate.  The
> prosecutor indicated that he instructed his witnesses
> not to refer to the gang.

7

Despite the foregoing pretrial colloquy and a specific instruction from the prosecutor, Alfonso Siguencia, who testified in Spanish with the aid of an interpreter, referred in Spanish to the Latin Kings. The judge immediately interrupted the testimony, and excused the jury from the courtroom.  Rodriguez moved for a mistrial.  Denying the motion, the judge observed that the reference to the Latin Kings was "not sufficient here in a foreign language in this courtroom in these circumstances to warrant a remedy by way of mistrial."  Luis's attorney quickly pointed out that the comment was translated into English, and came out "loud and clear."  Nevertheless, the judge again indicated that he would not grant a mistrial, stating that even though the name of the gang might have been heard by the jury in English,

> [t]he reference to the word Latin King in and of itself, while it would be preferable to have been avoided, does not necessarily mean that there's been an attribution to these defendants.
>
> The word Latin King has been used once in the course of the trial and the statement that it was being used in was terminated midway in Spanish by the- by the Court.  The procedure that we outlined and is to be followed must still be followed.  This one reference is not sufficient in and of itself to warrant a mistrial here.
>
> The jury, which had been excused, was then instructed by the judge to disregard the question and answer given by Alfonso before it was excused.  The judge indicated that he "suspected" that the jurors might not even recall the answered question, but told the jury "to disregard it if you do."

(RE AA at pp. 35-37)(internal footnote omitted).  The Appellate Division also discussed the circumstances surrounding Petitioner's argument that the trial court should have granted the mistrial based on the witnesses being present.  The Appellate Division explained:

[Petitioner and co-defendant] also complain that a mistrial should have been granted because future State witnesses were in court while defendants were also present, thereby rendering unreliable those witnesses' subsequent in-court identifications of defendants. Following a recess, the judge asked the prosecutor to bring in the three witnesses whom the State planned to call later during trial, specifically, Alfonso Siguencia's nephews, Rodrigo and Claudio, and Gonzalo Calle, in order to tell them that they had to return to testify.  There was no objection to the procedure, even though defendants were in the courtroom when the three witnesses were brought in.

Despite the lack of any objection, [co-defendant's] counsel moved for a mistrial, asserting that the three future witnesses "stared" at defendants during their brief appearance in court.  Thus, rendering the "whole identification process . . . a shambles."  The judge denied the motion since no defendant objected to the procedure before the witnesses were brought in.  Rodriguez's counsel complained that he was not aware of what was going to happen and, therefore, had no reason to object beforehand.

(RE AA, at pp. 37-38).

The Appellate Division decided these issues concerning the denial of the motions for mistrial based on state law as follows:

The underlying principles are well settled.  A mistrial should be granted only in a situation that would otherwise result in a manifest injustice.  A reviewing court should defer to the trial court's decision, since the trial court is in the best position to determine the effect of the allegedly prejudicial actions.  Absent an abuse of that discretion, or proof of actual harm to defendant, the trial court's refusal to declare a mistrial should not be reversed on appeal.

Respecting the fleeting reference to Latin Kings, we conclude that the judge's instructions were adequate to ameliorate any significant prejudice.  Moreover, there is no reason to believe that the jury was unwilling or unable to follow the curative instruction as given.  We also agree with the trial judge's

> observation that defendant would be in the courtroom
> when each of the witnesses testified and each witness
> was instructed not to talk with the others about the
> case or discuss their testimony.  The judge correctly
> refused to grant defendants' motions for mistrial.

(RE AA at pp. 38-40)(internal citations to state case law omitted).

The Appellate Division also explained Petitioner's claim in Ground 3, concerning the burglary charges, finding that under New Jersey state law, the building at issue was a "structure" as defined by the relevant statute, and was without merit.  (RE AA at pp. 24-25).

These state court rulings were based solely on state law and rules of procedure and evidence which are not reviewable in a federal habeas petition.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Here, it is plain that Petitioner was not denied due process or other federally protected right.  The record clearly indicates that the trial judge carefully instructed the jury with adequate curative instructions, and instructed counsel on proceeding.  Indeed, the Appellate Division found these claims to be without merit.  Therefore, Plaintiff has failed to establish any due process violation or undue prejudice that resulted in a manifest injustice or an unfair trial with respect to the incidents.  He is not entitled to federal habeas relief on these grounds.

**B.    Jury Charge Claim (Ground 4).**

10

In Ground 4 of the petition, Petitioner argues that the trial court erred in charging conspiracy to commit murder, as there was not substantive proof of such an agreement.  (Pet., ¶ 12).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every

11

fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

The record reveals that here, Petitioner's jury was charged with the reasonable doubt standard. (RE R). The trial judge charged:

> Each defendant has pleaded not guilty to the charges. Each defendant on trial is presumed to be innocent; and, unless each and every essential element of an offense charged against that defendant in a particular count in the indictment is proved beyond a reasonable doubt, the defendant must be found not guilty of the offense charged in that particular count of the indictment.
>
> Of course, the reverse is also true. If each essential element of the offense charged in a particular count of the indictment against a defendant is proved beyond a reasonable doubt, then that defendant must be found guilty of the offense charged against him in that particular count of the indictment.

(RE R, Trial Transcript at p. 14). It is clear from a review of the charge, that the charge did not lift the burden of proof.

As noted, there was substantial evidence to convict Petitioner of the crimes charged. That the jury chose to find him guilty based on the State's case against him does not render the trial unfair, or Petitioner's constitutional rights violated. This ground for habeas relief must be denied.

## C.   Prosecutorial Misconduct Claims (Grounds 5, 7).

In Ground 5, Petitioner argues that the prosecutor's closing argument exceeded the bounds of propriety when he talked about swearing on the Bible and of the commandment of "thou shall not kill."  Petitioner also complains that the prosecutor commented that the DeJesus brothers "don't understand accomplice liability. Okay?  They don't understand thou shalt not kill, so accomplice liability is something that's not even in the same town that they're in.  Okay?"  (Pet., ¶ 12).

The Appellate Division examined this argument on direct appeal and found that, in viewed in context of the entire trial, the comments did not render the trial unfair.  The Appellate Division held:

> Here, the prosecutor was merely pointing out that the witnesses took a solemn oath to tell the truth and that our laws have evolved from simple ones ("Thou shalt not kill") to the more complex ones facing the jury in the instant matter.  Moreover, the prosecutor was simply explaining why the brothers' contention that they should not be found guilty because there was no proof who actually stabbed Mario was untenable.  We do not believe that these isolated remarks concerning God and the Ten Commandments were sufficiently egregious to deprive defendant of a fair trial.

(RE AA at p. 33).

As to the prosecutor's reference during his summation to the Ten Commandments, the Court finds no basis for habeas relief. Under Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the

13

trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). As the state courts did, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, as found by the Appellate Division, the prosecutor's comment during summation was not so "egregious as to deprive [Petitioner] of a fair trial." (RE AA at p. 33). The decision of the Appellate Division is not contrary to, and does not involve an unreasonable application of, clearly established federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this claim will be denied.

In Ground 7, Petitioner argues that there was a lack of sufficient evidence to indict Petitioner, and that the prosecutor improperly presented hearsay testimony to the grand jury. (Pet., ¶ 12).

Generally, deficiencies in state grand jury proceedings are not grounds for relief under 2254. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989). This conclusion flows from United States

v. Mechanik, 475 U.S. 66 (1986), in which the Supreme Court held
that a violation of Fed. R. Crim. P. 6(d) (which governs who may
be present while the grand jury is in session, deliberating, or
voting), discovered only at trial, did not justify relief after
the petit jury had rendered its verdict.

> [T]he petit jury's subsequent guilty verdict means not
> only that there was probable cause to believe that the
> defendants were guilty as charged, but also that they
> are in fact guilty as charged beyond a reasonable
> doubt. Measured by the petit jury's verdict, then, any
> error in the grand jury proceedings connected with the
> charging decision was harmless beyond a reasonable
> doubt.

Mechanik, 475 U.S. at 70 (footnote omitted); see also United
States v. Console, 13 F.3d 641, 671-72 (3d Cir. 1993)(with the
exception of a claim of racial discrimination in the selection of
grand jurors, a petit jury's guilty verdict renders harmless any
prosecutorial misconduct before the indicting grand jury)(citing
Vasquez v. Hillery, 474 U.S. 254 (1986)).  Thus, to the extent
there were any deficiencies in the grand jury proceedings, they
must be considered harmless.

**D.   Ineffective Assistance of Counsel Claim (Ground 6).**

In Ground 6, Petitioner argues that his trial attorney was
ineffective for not informing him that he could propose a plea
offer to the state (Pet., ¶ 12F).

The Sixth Amendment, applicable to states through the Due
Process Clause of the Fourteenth Amendment, guarantees the
accused the "right ... to have the Assistance of Counsel for his

15

defense." U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. See id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury.  Some of the factual
> findings will have been unaffected by the errors, and

16

factual findings that were affected will have been
affected in different ways.  Some errors will have had
a pervasive effect on the inferences to be drawn from
the evidence, altering the entire evidentiary picture,
and some will have had an isolated, trivial effect.
Moreover, a verdict or conclusion only weakly supported
by the record is more likely to have been affected by
errors than one with overwhelming record support.
Taking the unaffected findings as a given, and taking
due account of the effect of the errors on the
remaining findings, a court making the prejudice
inquiry must ask if the defendant has met the burden of
showing that the decision reached would reasonably
likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address

both components of an ineffective assistance claim "if the

defendant makes an insufficient showing on one."  Strickland, 466

U.S. at 697.  "If it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed."  Id.

In this case, the Appellate Division examined this claim at

length in Petitioner's appeal of his PCR.  The Appellate

Division, repeatedly citing Strickland, found:

Defendant contends that he should have been
afforded an evidentiary hearing as to trial counsel's
alleged ineffectiveness in not pursuing plea
negotiations. "[P]lea bargaining is a critical stage of
the criminal proceeding at which the right of
representation attaches."  Counsel's misadvice of
sentencing exposure that induces defendant to reject a
plea agreement he otherwise would have accepted would
likely constitute prima facie ineffective assistance
such that an evidentiary hearing would be required.
Similarly, defendant asserts, his attorney's failure to
make an offer to the State establishes a prima facie
case of ineffective assistance of counsel.

17

Accordingly, at the PCR hearing, defendant argued that
trial counsel's failure to present a plea offer to the
State, as was then the practice in Essex County, was
per se ineffective assistance.  Defendant also contends
that trial counsel's ineffectiveness is underscored by
his failure to make a plea offer to the State when the
case appeared to weaken due to significant State
witnesses recanting prior inculpatory statements.

It is clear, however, that "a defendant has no
legal entitlement to compel a plea offer or a plea
bargain; the decision whether to engage in such
bargaining rests with the prosecutor."  The prosecutor
who tried defendant's case certified, in opposition to
the PCR petition, and reiterated at the PCR hearing,
that plea bargaining was simply never an option in this
case.  Because the crimes were "especially heinous,"
defendants were members of the Latin Kings gang, and
the State had "solid identifications" by multiple
victims and defendants' friends, in addition to
confessions, the State would do no less than try the
matter.  The prosecutor said, "The State had no
interest in entertaining any plea overtures.  There was
public interest in prosecuting these defendants to the
fullest.  Any proffered offer to plea-bargain would
have been rejected."

* * *

Defendant's contention that the State would have
entertained a plea offer had one been made is nothing
more than a bald assertion and unwarranted speculation.
For this reason, his ineffective assistance of counsel
claim fails, at the least, under the second prong of
the <u>Strickland-Fritz</u> test.  He has not demonstrated a
reasonable probability that, but for his attorney's
purported error, the outcome of the proceeding would
have been different.

RE EE at **2-3 (internal citations omitted).

This Court has reviewed the record of the case and finds

that counsel was not inefficient.  As determined by the state

courts, Petitioner has not satisfied the second prong of

<u>Strickland</u>, that is, the prejudice prong.  A review of the trial

18

transcripts reveals that the evidence in this case included eyewitness identification, and testimony from Petitioner's acquaintances of Petitioner's involvement in the crimes. Further, there is evidence in the record that any plea offer would not be entertained.  This Court agrees with the state courts that the case against Petitioner was solid, and that any alleged deficient performance with regard to the claims asserted by Petitioner here did not prejudice Petitioner or change the outcome of the trial.

    As the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Petitioner's claim will be denied.

**E.     Remaining Claims (Grounds 8 and 9).**

    In Ground 8, Petitioner argues that the cumulative effect of errors in the trial deprived Petitioner fundamental fairness in violation of his rights (Pet., ¶ 12H).  In Ground 9, Petitioner states that habeas relief should be granted (Pet., ¶ 12I).

19

Even if none of Petitioner's claims on its own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due process." <u>Sullivan v. Cuyler</u>, 631 F.2d 14, 17 (3d Cir. 1980); <u>see also</u> <u>Douglas v. Hendricks</u>, 236 F. Supp.2d 412, 436 (D.N.J. 2002)(Walls, J.)(stating that no cumulative error occurred when the trial was fair and verdict supported by sufficient evidence); <u>Pursell v. Horn</u>, 187 F. Supp.2d 260, 374 (W.D. Pa. 2002)("That the reliability of a state criminal trial can be substantially undermined by a series of events, none of which individually amounts to a constitutional violation, is an idea that has been accepted by nearly every federal court to have addressed the issue.").

This Court finds that Petitioner has not demonstrated the presence of aggregate trial errors which rendered his trial unfair.  There was sufficient evidence produced at the trial by the state witnesses that supported the verdicts rendered by the jury.  Therefore, this ground for habeas corpus relief will be denied.

<u>**CERTIFICATE OF APPEALABILITY**</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## CONCLUSION

For the reasons set forth above, the petition will be denied.  An appropriate order follows.


                                    s/ Faith S. Hochberg
                                    FAITH S. HOCHBERG
                                    United States District Judge

Dated: March 1, 2012

21